UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHADLEN DEWAYNE SMITH,<br><br>        Plaintiff,<br><br>vs.<br><br>LORI RAWSON, MATT KEELER, REBECCA SHRUM, JEFF SCHRAEDER, JUDY MESICK, THOMAS KNOFF, and DYLAN HOBSON,<br><br>        Defendants. | Case No. 1:19-cv-00053-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Chadlen DeWayne Smith's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

### REVIEW OF PLEADINGS

**1. Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence

is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

3. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho State Correctional Center (ISCC). Plaintiff asserts that Defendants have violated his constitutional rights in the following ways.

On or about September 1, 2010, Defendants wrongfully labelled him a "sex offender" based only on charges and not a conviction—all without due process of law. He was forced to live in a sex offender housing unit and to undergo sex offender treatment (SOTP) while in prison. He had to complete a Static 99 test for sex offenders, even though he was never convicted of a sex offense.

On June 8, 2015, the Idaho Commission of Pardons and Parole (ICPP) granted Plaintiff an open parole date contingent upon him completing the SOTP. Plaintiff was told he would also be subject to sex offender parole conditions if released. Plaintiff was released from prison on November 3, 2016, and paroled to Washington under the Interstate Compact. Plaintiff was returned to prison on March 16, 2017.

On June 29, 2017, Plaintiff was paroled to Idaho. He was required to follow the IDOC sex offender agreement of supervision program, with no due process opportunity to demonstrate that he should not be subject to such conditions because he was not a sex offender. Plaintiff asserts that the conditions of parole exceeded the standards set by the

"stigma plus" test.[1] Plaintiff asserts that Idaho Probation and Parole Officer (PPO) Lori Rawson and Matt Keeler repeatedly retaliated against him for exercising his First Amendment and Fifth Amendment rights during his parole.

It appears that Plaintiff was trying to gain approval to be paroled to Washington again during the time he was on parole to Idaho. Plaintiff alleges that, on an unspecified date, Defendants Rebecca Shrum and Judy Mesick falsely claimed that he was noncompliant with his parole conditions, and they refused to process his Interstate Compact paperwork unless he came into compliance. Their actions were based on Rawson's assertion that Plaintiff was noncompliant because of a Facebook account bearing Plaintiff's name and containing his photos. Plaintiff asserted that his father created and maintained the Facebook account and that it would be a violation of his father's First Amendment rights to prevent his father from maintaining that account. Rawson threatened Plaintiff and his father with violating Plaintiff's parole if the account was not deleted. On November 15, 2017, Plaintiff filed a grievance over this issue.

Another of Plaintiff's grievances arose from a January 20, 2017 "full disclosure polygraph" test. He was asked about prior incidents of child sexual abuse for which he had never been charged and/or convicted, and he invoked his Fifth Amendment rights. He asserts that, eleven months later, Rawson falsified information in a "Special Progress

---

[1] Procedural due process protections apply to reputational harm only when individuals suffer stigma from governmental action plus the alteration or extinguishment of rights or status recognized by state law. *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). This is known as the "stigma-plus" test. *See Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006). To prevail on such a claim, "the plaintiff must show that the injury to his reputation was inflicted in connection with the deprivation of a federally protected right," and that "the injury to reputation caused the denial of a federally protected right." *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

Report Warning Letter," falsified a response on a grievance he wrote, and falsified a "Level of Service Inventory" about Plaintiff. As a result, Rawson, Keeler and Supervisor Jeff Schraeder wrongfully required Plaintiff to complete a six-month-long substance abuse program and to agree to ten additional parole conditions to remain on parole.

Plaintiff asserts that Rawson and Keeler retaliated against him for having filed grievances to protect exercise of his First and Fifth Amendment rights, and that they otherwise harassed him in various ways. Plaintiff also asserts that Keeler violated his right to be free from double jeopardy by punishing him twice for one incident of not being at his residence during curfew hours—with discretionary jail time *and* an electronic ankle monitoring device.[2] After Plaintiff filed grievances about this incident, he was arrested on parole violations—Plaintiff asserts that is arrest was retaliation for the grievances he filed against the PPOs.

On January 11, 2018, Thomas Knoff, an IDOC parole violation hearing officer, found Plaintiff guilty of one parole violation. Plaintiff asserts that Knoff was in conspiracy with Rawson and Keeler, because Knoff found him guilty in the absence of any evidence supporting Knoff's finding. On November 29, 2018, Knoff prepared a parole violation findings report for the ICPP that contained falsified information. Plaintiff asserts that Knoff retaliated against him for invoking his Fifth Amendment rights on the "full disclosure polygraph."

Plaintiff asserts that he complained of the violation of his rights to Defendant Dylan

---

[2] The double jeopardy protection applies only to criminal punishments, and not to parole revocation or parole conditions. *See Moor v. Palmer*, 603 F.3d 658, 660-61 (9th Cir. 2010).

Hobson, the IDOC Deputy Chief of the Probation and Parole Division. Hobson took no action to prevent further retaliation or to provide reparation to Plaintiff, finding that Plaintiff's claims had no merit. Plaintiff also asserts that Hobson manipulated information on Plaintiff's grievances and relied on false information to deny Plaintiff's claims.

Plaintiff alleges that Defendants' acts violated his rights under the First Amendment, Fifth Amendment, and Fourteenth Amendment Due Process Clause and Equal Protection Clause. He also asserts state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress.

4. **Discussion of Threshold Issues**

   *A. Statute of Limitations*

   A threshold issue in a federal civil rights action is whether the Complaint was timely filed. The statute of limitations period for filing a civil rights lawsuit under 42 U.S.C. § 1983 is determined by the statute of limitations period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here). Idaho Code § 5-219 provides for a two-year statute of limitations for professional malpractice, personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho are governed by this two-year statute of limitations.

   Although the Court relies upon the state statute of limitations to determine the time for filing a claim, the Court uses federal law to determine when a claim accrues. *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). The Ninth Circuit has determined that a claim accrues when the plaintiff knows, or should know, of the injury that is the basis

of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Under this discovery rule, the statute begins to run once a plaintiff knows of his injury and its cause. *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986).

While many of Plaintiff's claims arise from incidents occurring within two years of the filing of the Complaint (February 7, 2019 (if the mailbox rule applies)), some may be outside the limitations period, such as incidents occurring between 2010 and 2016.

### B. Heck v. Humphrey

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court of the United States held that where a verdict in a civil rights action would necessarily imply the invalidity of a plaintiff's conviction (or parole revocation),[3] he must first prove that the conviction or parole revocation has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* As a result, "a claim for damages bearing that relationship to a conviction [or parole revocation] that has not been so invalidated is not cognizable under § 1983." *Id* (parenthetical added). On the other hand, if "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment [or parole revocation] …, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (parenthetical and ellipses added).

---

[3] *See Wilkinson v. Dotson*, 544 U.S. 74 (2005)(distinguishing parole claims that are and are not subject to the *Heck* bar); *Wilson v. City of Fountain Valley*, 372 F. Supp. 2d 1178, 1195-96 (C.D. Cal. 2004)(same).

Some of Plaintiff's claims may implicate the *Heck v. Humphrey* bar. The Court does not have adequate information about Plaintiff's parole revocation to determine whether adjudicating the claims in this civil rights action would call into question the validity of the parole revocation. This question must be determined on a claim-by-claim basis after the parties supply the necessary facts.

### C. Absolute Immunity

A parole officer's quasi-judicial acts are subject to absolute immunity. *Thornton v. Brown*, 757 F.3d 834, 839-840 (9th Cir. 2013). In *Swift v. California*, 384 F.3d 1184 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit explained:

> [P]arole board officials are entitled to absolute quasi-judicial immunity for decisions "to grant, deny, or revoke parole" because these tasks are "functionally comparable" to tasks performed by judges. *Sellars* [*v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)]; *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991) (holding *Sellars* immunity encompasses actions "taken when processing parole applications").

*Id*. at 3.

Absolute immunity has also been extended to parole officials for the "imposition of parole conditions" and the "execution of parole revocation procedures," tasks integrally related to an official's decision to grant or revoke parole. *Id*.

The absolute immunity bar similarly has been applied when plaintiffs argue that they are not challenging the parole board's denial of parole, but rather its refusal to comply with a contractual plea agreement; this argument has been rejected because denial of parole necessarily encompasses all such considerations. *Brown v. California Dept. of Corrections*,

554 F.3d 747, 751 n.3 (9th Cir. 2009). Further, absolute immunity applies even when the actions taken during adjudicatory functions are alleged to have been the result of retaliation for a plaintiff having filed civil rights suits against the decisionmakers. *See, e.g., Johnson v. Kegans*, 870 F.2d 992 (5th Cir. 1989); *Romer v. Travis*, 2001 WL 220115 (S.D.N.Y. 2001).

Courts have acknowledged that absolute quasi-judicial immunity applies, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). When absolute immunity applies, it means that a state actor is not liable for monetary damages. *Stump v. Sparkman*, 435 U.S. 349 (1978).

Some of Plaintiff's claims are aimed at government officials who established his parole conditions, modified or refused to modify his parole conditions, or recommended that his parole be denied. Thus, some officials may be entitled to absolute quasi-judicial immunity. Immunity is an issue that is to be resolved early in a case, because this protection is not immunity from damages, but immunity from suit.

### D. Qualified Immunity

Even if a plaintiff shows a violation of a constitutional right under § 1983, a defendant may be entitled to qualified immunity. The doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate a plaintiff's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Contrarily, a state official may be held

personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*.

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [defendant's] conduct violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009). The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quotation omitted).

In some cases, "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." *Crawford-El v. Britton*, 523 U.S. 574 n.14 (1998) (citations omitted). While courts have wide discretion in staying discovery and plaintiffs do not have the right to conduct broad discovery in a civil rights action until the immunity issue is decided, they are entitled to conduct limited discovery where discovery can affect the immunity decision. *See Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988). Particularly, plaintiffs may propound discovery "concerning issues that bear upon the qualified immunity defense, such as the actions that the [defendant] official actually took. . . ," if such information is unknown to them. *Crawford-El*, 523 U.S. at 599-600.

5. **Summary**

Because the Complaint raises several fact-dependent threshold issues, the Court finds it appropriate to have the Complaint served upon Defendants and authorize the filing

of an early motion to dismiss and/or motion for summary judgment on the above issues, as well as any other issues that are apparent to the parties from their review of the record.

6. **Disclosures and Discovery**

Because this case is about parole officials' actions, not prison conditions, the Court will not issue the Standard Disclosure and Discovery Order. Rather, only the following disclosures and discovery should be exchanged, propounded, and answered until further order of the Court.

Defendants and Plaintiff will be required to produce to each other all information and records that are relevant to the threshold issues above within 30 days after service of process or written acceptance of service.

## ORDER

**IT IS ORDERED:**

1. Plaintiff may proceed on the claims against Defendants to the next stage of litigation.

2. Plaintiff's Request for Appointment of Counsel (contained in the Complaint) is DENIED without prejudice. When the Court has opportunity to review the parties' evidence, it will reconsider whether appointment would be appropriate.

3. Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within **30 days**. If Defendants choose to return the Waiver of Service of Summons, the answer

or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

> **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of all Defendants.

4. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

5. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional **90 days** from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

6. Defendants and Plaintiff will be required to produce to each other all information and records that are relevant to the threshold issues above within 30 days after service of process or acceptance of service. No further discovery will be permitted or disclosures required until further order of the

Court.

7. Relevant documents may be produced in a redacted form if necessary for security or privilege purposes; and, if necessary, the producing party must provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information.

8. Submission of an earlier motion for summary judgment addressing procedural or preliminary issues does not foreclose any party from later filing a motion for summary judgment on the merits or to assert immunity or other defenses after full discovery.

9. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10. The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*"

means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: September 23, 2019



_____
David C. Nye
Chief U.S. District Court Judge