UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHADLEN DeWAYNE SMITH,<br><br>               Plaintiff,<br><br>v.<br><br>LORI RAWSON, MATT KEELER, REBECCA SHRUM, JEFF SCHRAEDER, JUDY MESICK, THOMAS KNOFF and DYLAN HOBSON,<br><br>               Defendants. | Case No. 1:19-cv-00053-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court in this civil rights matter is Defendants' Motion for Summary Judgment (Dkt. 21) and Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 26). Both motions are fully briefed and ripe for the Court's review.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance

**MEMORANDUM DECISION AND ORDER - 1**

with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. 18.) Accordingly, the Court enters

the following Order granting Defendants' motion, denying Plaintiff's motion, and

dismissing this case with prejudice.

## BACKGROUND

At the time Plaintiff filed the complaint in this matter on February 11, 2019,

Plaintiff was a prisoner in federal custody at the Idaho State Correctional Center in Kuna,

Idaho. His claims arise out of his contention that Defendants classified him as a sex

offender and required him to undergo sex offender treatment, even though he was not

convicted of a sex offense. Proceeding pro se, Plaintiff asserts claims under 42 U.S.C. §

1983 for alleged violations of his constitutional rights under the First, Fifth, and

Fourteenth Amendments to the United States Constitution, against Defendants Lori

Rawson, Matt Keeler, Jeff Schraeder, Rebecca Shrum, Judy Mesick, Dylan Hobson, and

Thomas Knoff. Probation and Parole Officers Rawson and Keeler supervised Plaintiff

while on parole, while Officers Shrum and Mesick participated at times throughout

Plaintiff's term of supervision. Schraeder is a Supervisor for Probation and Parole,

District #1, and Hobson is Deputy Chief of Probation and Parole. Knoff is a Parole

Violation Hearing Officer. Plaintiff asserts state law claims against these officers as well,

arising out of the same conduct forming the basis for his claims under Section 1983.

The Court completed its review of the Complaint and issued an order on

September 23, 2019, allowing Plaintiff to proceed on the following claims arising from

his incarceration and later release on parole: (1) Fourteenth Amendment due process

claims regarding Defendants' classification of Plaintiff as a sex offender; placement in

**MEMORANDUM DECISION AND ORDER  - 2**

sex offender housing while in prison; requiring he undergo sex offender treatment as a condition of parole; and, imposition of the IDOC sex offender agreement of supervision program; (2) a Fifth Amendment claim based upon allegations that Defendants retaliated against him when Plaintiff refused to answer questions about prior incidents of child sexual abuse as part of a full disclosure polygraph test; and (3) a First Amendment free speech claim based upon Defendants' directive to remove his Facebook account. (Dkt. 6.) His state law claims include intentional and negligent infliction of emotional distress. The Initial Review Order identified several threshold issues, and allowed for the submission of a motion for summary judgment by Defendants addressing preliminary issues that may foreclose some or all of Plaintiff's claims. (Dkt. 6.)

On July 6, 2020, Defendants filed the motion for summary judgment presently before the Court. (Mot. Summ. J., Dkt. 21.) Defendants argue that Plaintiff's claims are barred by the statute of limitations; *Heck v. Humphrey*; claim and issue preclusion; judicial estoppel; and absolute immunity. The Court provided notice to Plaintiff of his rights and obligations regarding the Defendants' motion for summary judgment on July 7, 2020. (*See* Notice to Pro Se Litigants, Dkt. 22.) In response to Defendants' motion, Plaintiff filed a motion for continuance under Fed. R. Civ. P. 56(d). (Dkt. 23.) The Court denied Plaintiff's motion, ordering him to file a response to the motion for summary judgment on or before October 9, 2020. (Dkt. 25.) On October 7, 2020, Plaintiff filed a

response to the motion for summary judgment and a motion for leave to file a proposed amended complaint. (Dkt. 26, 29.)[1]

The proposed amended complaint retains the claims against Defendants Rawson, Keeler, Shrum, Schraeder, Mesick, Knoff and Hobson arising out of Plaintiff's allegations that Defendants wrongfully classified him as a sex offender and thereafter retaliated against him. However, the proposed amended complaint names additional defendants, and alleges violations of the Eighth Amendment to the United States Constitution arising out of an incident occurring on or about April 30, 2019, for which Plaintiff alleges he received inadequate medical care.

Defendants oppose the motion to amend the complaint. (Dkt. 28.)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1. Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of those facts is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

---

[1] Plaintiff filed also a "Motion in Response to Summary Judgment" on October 13, 2020. (Dkt. 27.) However, upon review, the Court determined the filings at Docket 27 and 29 are identical. It is not clear why the docket entries 26 – 29 are out of sequence.

**MEMORANDUM DECISION AND ORDER  - 4**

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The party moving for summary judgment has the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."

**MEMORANDUM DECISION AND ORDER - 5**

*Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If the plaintiff fails to produce evidence, or if the evidence produced is insufficient, the Court "is not required (or even allowed) to assume the truth of the challenged allegations in the complaint." *Id.*

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be stricken. Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the

motion and supporting materials—including the facts considered undisputed—show that

the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set

forth by the non-moving party. Direct testimony of the non-moving party must be

believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.

1999). However, although all reasonable inferences which can be drawn from the

evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec.

Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences

from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue

of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The

Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper

foundation laid to authenticate them cannot support a motion for summary judgment."

*Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (internal

quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a),

is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must

contain "testimony of a witness with personal knowledge of the facts who attests to the

identity and due execution of the document." *Id.*

Pro se inmates are exempted "from *strict* compliance with the summary judgment

rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir.

2018). In opposing a motion for summary judgment, a pro se inmate must submit at least

"some competent evidence," such as a "declaration, affidavit, [or] authenticated

document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

## 2.    Undisputed Facts

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of them, insofar as that version is not blatantly contradicted by clear documentary evidence in the record. *See Scott*, 550 U.S. at 380. The Court has considered the facts material to the allegations raised in the initial complaint and the proposed amended complaint relating to Plaintiff's claims arising under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and his contention that he was wrongfully classified as a sex offender; required to undergo a polygraph examination and sex offender treatment; and prohibited from maintaining or updating his Facebook profile.

Plaintiff was charged with two counts of Lewd Conduct with a Minor Under Sixteen, a felony, in violation of Idaho Code § 18-1508, which conduct occurred on November 13, 2009. (Dkt. 30-3 at 10; 21-5 at 6.) He was charged with twice having "manual-genital contact" with a six-year old child. (Dkt. 30-3 at 10.) Pursuant to a guilty plea, the charges were amended to one count of Injury to Children, a violation of Idaho Code § 18-1501(a). The Amended Information asserted that: "the Defendant, Chadlen DeWayne Smith, on or about the 13th day of November, 2010, in the County of Kootenai,

State of Idaho, did, under circumstances likely to produce great bodily harm, willfully cause or permit the child to be placed in a situation endangering her health or person, while having care and/or custody of the child…a child of the age of 6 years, by engaging in sexual conduct with said child[.]" (Am. Information, Mar. 10, 2010, Dkt. 21-5.)

On September 1, 2010, District Judge John T. Mitchell sentenced Plaintiff to a term of imprisonment of seven years fixed (determinate) followed by three years indeterminate, for a total sentence of ten years, and retained jurisdiction for one year pursuant to a Therapeutic Community Rider. Judge Mitchell further ordered that Plaintiff complete a full year of chemical dependency treatment; sex offender treatment; and cognitive restructuring. (Sentencing Disposition, Dkt. 21-5 at 5.) And finally, the sentencing judge ordered that Plaintiff "will need a full disclosure polygraph to have probation considered." (*Id.*)

On March 16, 2011, following Plaintiff's unsatisfactory performance on the retained jurisdiction rider, the court imposed sentence, modifying the sentence to three years fixed followed by seven years indeterminate and relinquished its jurisdiction, for Plaintiff to have a chance to obtain "the much needed sex offender treatment, chemical dependency treatment, and cognitive restructuring." (Mem. Decision Nov. 7, 2011, Dkt. 21-5 at 9 - 12.) The court indicated Plaintiff would be parole eligible during the indeterminate seven years.

On July 18, 2011, Plaintiff filed a Motion for Correction or Reduction of Sentence pursuant to Idaho Crim. Rule 35, which was initially denied by the court as untimely, but later reviewed upon Plaintiff's motion for reconsideration. Judge Mitchell denied the

MEMORANDUM DECISION AND ORDER  - 9

motion, explaining that the sentence imposed "was and is an appropriate sentence given Smith's social and criminal history and the crime for which sentence was imposed. A lesser sentence would depreciate the seriousness of Smith's crime." (Dkt. 21-5 at 6.)

Plaintiff was placed on parole on November 3, 2016, and allowed to transfer his parole to the State of Washington via interstate compact. (Dkt. 21-5 at 17.) During supervision, Plaintiff was directed to complete a sexual deviancy evaluation, which he did not complete, and a sexual history polygraph, which he did not complete. (Dkt. 21-5 at 24, 27, 29.) Rather, Plaintiff submitted to a polygraph examination on March 14, 2017, to test for any violations of treatment rules and/or terms of release. (Dkt. 21-5 at 88.) The results of the polygraph test indicated Plaintiff was being untruthful. (Dkt. 21-5 at 89.) At the conclusion of the examination, Plaintiff admitted to accessing the internet, which was prohibited as a condition of supervision. (Dkt. 21-5 at 25, 26, 89.) Plaintiff was arrested for violations of his parole, and he was sent back to an IDOC facility in Idaho on April 27, 2017. (Dkt. 21-5 at 17 – 25.)

On June 29, 2017, the Parole Commission issued an executive decision electing to reinstate Plaintiff's parole. (Dkt. 21-5 at 129.) Plaintiff was released from custody to resume parole in Idaho under the same conditions as previously imposed. (Dkt. 21-5 at 129, 138.) On the same day, Plaintiff was approved for residency at transitional housing at a state motel. (Dkt. 21-5 at 41.)

On July 3, 2017, Plaintiff met with Officer Lori Rawson, and he initialed and signed an Agreement of Supervision for IDOC. (Dkt. 21-5 at 33 – 35, 41.) Plaintiff initialed and signed also IDOC's Sexual Offender Agreement of Supervision. (Dkt. 21-5

MEMORANDUM DECISION AND ORDER  - 10

at 37.) The agreement prohibited internet access, required that Plaintiff obtain a sex offender evaluation, and that Plaintiff comply with all requirements of the treatment program. (Dkt. 21-5 at 37.) On July 7, 2017, Officer Rawson noted in her report that Plaintiff became argumentative during her review of the parole agreement with him, stating "that he is not a sex offender, should not have to follow [Sex Offender Agreement of Supervision], only the Parole Conditions, and of those he won't do…no sex offender evaluation." (Dkt. 21-5 at 43.) Officer Rawson directed him to write a statement concerning what Plaintiff was willing to do on parole, and which rules he will follow. (*Id.*) Plaintiff wrote a statement, witnessed by Officer Rawson on July 11, 2017, indicating he was willing "to…follow the conditions imposed by the Idaho Commission of Pardons and Parole and by Probation and Parole Officer." (Dkt. 21-5 at 39.)

On July 11, 2017, Plaintiff indicated he wanted to transfer again his parole to the State of Washington. Officer Rawson informed him that, under the interstate compact, Washington would not agree to a transfer unless Plaintiff was in full conformance with the conditions of his parole in Idaho, which conditions included submitting to a full diagnostic polygraph test. (Dkt. 21-5 at 44.)

On July 17, 2017, officers Judy Messick and Rebecca Shrum spoke with Plaintiff about the need for compliance with the conditions of his parole so that he was eligible for transfer to Washington. (Dkt. 21-5 at 45.) During the meeting, Plaintiff refused to agree to several conditions of his parole, including deletion of an active Facebook profile and obtaining a full diagnostic polygraph. *Id*. Plaintiff denied that the Facebook profile was his, and stated that his "Dad owns it and it is his First Amendment right to do it." *Id.*

**MEMORANDUM DECISION AND ORDER  - 11**

On July 22, 2017, Officer Rawson received information that Plaintiff was asked to vacate his motel room at transitional housing for failure to follow the housing rules, and for being "rude, mouthy, constantly battling over rules…." (Dkt. 21-5 at 48, 50, 51.) Plaintiff was warned again for continuing to maintain an active Facebook profile, and Plaintiff again refused to discontinue posting to his Facebook timeline, stating that "PPO cannot force him to take it down." (Dkt. 21-5 at 52.) On August 1, 2017, Plaintiff's case file indicates he was ordered to serve two days of discretionary jail time for failing to delete his Facebook account,[2] losing his transitional housing, and for not obeying the conditions of IDOC's Sexual Offender Agreement of Supervision. (Dkt. 21-5 at 53.)

On August 8, 2017, Officer Rawson contacted Plaintiff and verified that Plaintiff had obtained employment and secured a temporary place to reside. (Dkt. 21-5 at 54, 56.)

On August 28, 2017, Officer Rawson spoke with Officer Mesick for a progress review. (Dkt. 21-5 at 56.) Officer Mesick explained that Plaintiff would not be permitted to transfer his parole to Washington until he deleted his Facebook account; accepted the terms of supervision as a sex offender; and maintained employment and housing. (Dkt. 21-5 at 56-57.)

Officer Rawson verified that Plaintiff had secured permanent housing on or about September 5, 2017. (Dkt. 21-5 at 57.) On September 8, 2017, Officer Rawson met with Plaintiff and his mental health counselor. (Dkt. 21-5 at 58.) Officer Rawson discussed a

---

[2] Internet users first create a personal account on Facebook, which in turn generates a Facebook Profile. The terms Facebook profile and Facebook account are sometimes used interchangeably. Individuals with an active Facebook profile may post updates, upload photos, and share videos to their personal timeline or story. Account holders have the option of deactivating or permanently deleting an account. *See* www.Facebook.com/help

**MEMORANDUM DECISION AND ORDER - 12**

plan to work towards transfer of Plaintiff's parole to Washington, and Plaintiff agreed to a plan of compliant behavior for a period of six months. (Dkt. 21-5 at 58.) Plaintiff confirmed that each expectation was "reasonable, attainable and fair." *Id.*

On October 24, 2017, Officer Rawson met with Plaintiff to discuss his compliance with supervision. (Dkt. 21-5 at 62.) Plaintiff had been instructed to schedule a polygraph test, as the results of the last polygraph taken on March 14, 2017, were "untruthful." (Dkt. 21-5 at 62.) Officer Rawson's notes indicate that Plaintiff objected to supervision as a sex offender, completion of sex offender treatment, and receiving sex offender-specific conditions of supervision. *Id.* On November 2, 2017, Officer Rawson was informed by Plaintiff's treatment provider that Plaintiff had not contacted the provider's office to begin sex offender treatment. (Dkt. 21-5 at 67.) She confirmed also that Plaintiff had not scheduled a polygraph examination. (Dkt. 21-5 at 67.)

On November 3, 2017, Plaintiff received a written Warning Letter from Officer Rawson for his non-compliance with the conditions of his parole, which included failing to schedule and submit to a polygraph examination and to engage in sex offender treatment. (Dkt. 21-5 at 68, 92 - 94.) Plaintiff was placed on house restriction and required to remain at his reported residence unless he was scheduled to begin work. (Dkt. 21-5 at 94.) He was warned that failure to complete a full disclosure and/or maintenance polygraph and to engage in sex offender treatment no later than December 1, 2017, would result in referral back to the parole commission for further consideration. (Dkt. 21-5 at 94.) Plaintiff signed the warning letter on November 6, 2017. (Dkt. 21-5 at 94.) Plaintiff disputed that he was required to take another full disclosure polygraph and stated he

would plead the 5th Amendment on any questions asking about prior potential victims. (Dkt. 21-5 at 68.)

On November 11, 2017, Officer Rawson was informed by Plaintiff's housing manager that Plaintiff had broken curfew, refused to provide a urine sample, and later when he did so that Plaintiff tested positive for amphetamine. (Dkt. 21-5 at 71, 97.)

On November 16, 2017, Plaintiff met with Officer Rawson, Officer Matt Keeler, and Supervisor Jeff Schraeder to discuss a grievance appeal form Plaintiff filed regarding the requirement that he submit to a full disclosure polygraph examination. (Dkt. 21-5 at 73-74.) Officer Schraeder explained to Plaintiff that he would not be allowed to transfer his parole to Washington until he was in compliance with IDOC terms and conditions. Director Judy Mesick confirmed this information. (Dkt. 21-5 at 74.) Plaintiff was informed that he was not in compliance with IDOC terms and conditions because he was not currently in sex offender treatment and he had failed the maintenance polygraph on or about November 9, 2017. *Id.*

At the conclusion of the meeting on November 16, Plaintiff was described as appearing to be in agreement with the requirement to obtain sex offender treatment and a maintenance polygraph examination. Plaintiff executed an Agreement for Success contract at that time. (Dkt. 21-5 at 99.) Jeff Schraeder noted also that Plaintiff understood that he did not have to answer certain questions on his polygraph, but by not answering them, IDOC would not be able to accurately assess his historical offense behavior. *Id.* And, Plaintiff was perceived to be in agreement with the contract's terms, and that he understood by following the terms and conditions therein, he would gain compliance with

**MEMORANDUM DECISION AND ORDER  - 14**

IDOC terms and conditions and could transfer his parole to Washington. (Dkt. 21-5 at 74.)

On November 19, 2017, Officer Rawson received an email from Plaintiff's housing manager, who informed Officer Rawson that Plaintiff had broken curfew and was untruthful about his whereabouts. (Dkt. 21-5 at 76.) Officer Rawson was informed that Plaintiff's residency would be terminated for violating the housing rules and the conditions of his parole. (Dkt. 21-5 at 76.)

On November 20, 2017, Officer Keeler met with Plaintiff to inform him that he was being sanctioned with two days of discretionary jail time for his parole violations and was instructed to report to Kootenai County jail. (Dkt. 21-5 at 77 – 78.) Rather than report to the jail, Plaintiff later telephoned the Coeur d'Alene police department, reported that he had taken all of his medications in a suicide attempt, and refused to inform officers of his whereabouts. (Dkt. 21-5 at 78.) Officers located Plaintiff at work, took him into protective custody, and transported him to the hospital for evaluation. *Id.* Because Plaintiff refused to cooperate with officers when they requested his whereabouts after his alleged suicide attempt, Officer Keeler placed an ankle monitor on Plaintiff on November 28, 2017. (Dkt. 21-5 at 79.)

On December 1, 2017, Officer Keeler contacted Plaintiff after Plaintiff requested a different ankle monitor, because the ankle monitor continued to audibly beep. (Dkt 21-5 at 81.) Officer Keeler instructed him on how to properly charge the monitor. *Id*. Plaintiff complained a second time to Officer Keeler that the monitor was audibly beeping, so it was replaced on December 6, 2017. (Dkt. 21-5 at 81.)

**MEMORANDUM DECISION AND ORDER - 15**

On December 11, 2017, Officers Steven Veare and Lori Rawson made a supervision contact with Plaintiff that resulted in his arrest. (Dkt. 21-5 at 82-83.) The circumstances of the arrest, as documented in Plaintiff's offender history file, indicate that officers discovered Plaintiff attempted to remove his ankle monitor over the weekend, and was out after curfew. GPS records confirmed Plaintiff's location, and that he was not at his residence. Inspection of the ankle monitor by Officer Hobson revealed that it was being held together with black tape. (Dkt. 21-5 at 84.) Plaintiff was taken into custody for tampering with the ankle monitor and for violation of curfew. (Dkt. 21-5 at 83.)

Notes in Plaintiff's offender history file document Plaintiff was asked about how the ankle monitor became damaged. Plaintiff reported that he was a heavy sleeper and must have kicked at it in his sleep. (Dkt. 21-5 at 84.) Officer Rawson called the company that services the ankle monitors and inquired whether it was possible for damage to occur in such a manner. *Id*. The service provider informed Officer Rawson that he did not believe that was possible. *Id*.

On December 11, 2017, Officer Keeler executed an Agent's Warrant of Arrest. (Dkt. 21-5 at 115.) The warrant alleged Plaintiff had violated conditions of supervision imposing curfew and that he had tampered with an electronic monitoring device (aka ankle monitor). (Dkt. 21-5 at 115.) On December 15, 2017, Officer Keeler prepared a report of parole violation stating that Plaintiff violated three rules of supervision: (1) complying with an agreement of supervision; (2) observing curfew restrictions; and (3) participating in and complying with the electronic monitoring agreement of a daily

**MEMORANDUM DECISION AND ORDER - 16**

schedule if requested by the supervising officer. (Dkt. 21-5 at 102.) Officer Keeler recommended in the report that the Parole Commission issue a warrant to replace the Agent's Warrant, and schedule a parole violation hearing. (Dkt. 21-5 at 102.) Section Supervisor Jeff Schraeder approved Officer Keeler's report and recommendation. (Dkt. 21-5 at 105.)

A preliminary hearing was conducted at the Kootenai County Jail on December 15, 2017. (Dkt. 21-5 at 84, 102, 117, 120.) Section Supervisor of Probation and Parole District #1, John Andrich, determined that probable cause existed to believe that Plaintiff had violated his curfew on numerous occasions while on parole and that Plaintiff had tampered with his ankle monitor. (Dkt. 21-5 at 120-21.)

Plaintiff submitted to a maintenance polygraph examination on December 20, 2017. (Dkt. 21-5 at 86.) The purpose of the examination was to complete and verify a sexual history. *Id*. Plaintiff stated that he would not answer questions about his sexual history, because his answers could be used against him and that such questions violated his Fifth Amendment right against self-incrimination. The polygraph examiner advised Plaintiff that answers to questions could not be compelled. (Dkt. 21-5 at 86.) Plaintiff was truthful during the examination but refused to complete the exam as it pertained to identifying the age, gender, and sex acts of any of his previous victims. (*Id*. at 87.) Officer Rawson had previously informed Plaintiff on November 3, 2017, that the information provided during the polygraph examination would not be disclosed to law enforcement, and was for purposes of treatment. (Decl. of Rawson ¶ 32, Dkt. 21-4.)

**MEMORANDUM DECISION AND ORDER - 17**

On January 8, 2018, Officer Keeler provided Plaintiff with a notice of rights explaining Plaintiff's rights afforded during the parole violation/revocation process. (Dkt. 21-5 at 125.) On January 10, 2018, Plaintiff received notice of the parole revocation hearing, and the hearing took place on January 11, 2018. (Dkt. 21-5 at 124, 128.) Violation Hearing Officer Thomas Knoff found Plaintiff guilty of the parole violations and recommended that his parole be revoked. (Dkt. 21-5 at 133.)

Plaintiff was placed back into an IDOC correctional facility on January 17, 2018. (Dkt. 21-5 at 17.) On February 6, 2018, the Parole Commission elected to not revoke Plaintiff's parole status and allowed him the privilege of continuing his parole upon completion of a prison diversion program as long as Plaintiff agreed to complete the assigned programs. (Dkt. 21-5 at 135.) Plaintiff refused to participate in parole unless he was allowed to immediately transfer his parole to Washington. (Dkt. 21-5 at 136.) Diversion was therefore denied by the Parole Commission, and Plaintiff's parole was revoked. (Dkt. 21-5 at 136.)

On August 21, 2019, Plaintiff filed a petition for writ of habeas corpus in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada, in Case No. CV01-19-02625. (Dkt. 30-2 at 2.) Plaintiff claimed his due process rights and Fifth Amendment right against self-incrimination were violated because the alleged parole violations were fabricated, and he was retaliated against for refusing to submit to a polygraph examination. He alleged also that Officers Lori Rawson and Matt Keeler imposed sex offender parole conditions, despite the fact that his conviction was

not for a sex offense. The district court granted summary judgment to the respondent

officers. (Dkt. 30-3 at 2.)

Plaintiff's Complaint and proposed amended complaint filed with this Court set

forth the following claims, as explained further in Plaintiff's memorandum filed in

opposition to Defendants' motion for summary judgment, and summarized as follows:

(1) Defendants violated his Fourteenth Amendment due process rights because,

throughout his incarceration and parole, he was classified as a sex offender and required

to complete sex offender treatment as a precondition for parole eligibility; (2) Defendants

required Plaintiff to submit to multiple polygraph examinations after he had taken an

initial examination, and answer questions for which he invoked his Fifth Amendment

right against self-incrimination; (3) Defendants imposed additional parole conditions,

which included: (a) removal of his Facebook profile from the internet; (b) electronic

location monitoring; and (c) curfew; and, (4) Defendants relied upon false information to

manufacture parole violations, which led to the imposition of additional parole

conditions, and ultimately to revocation of parole.

For the reasons discussed below, the claims asserted in the Complaint and the

proposed amended complaint against Defendants Rawson, Keeler, Schraeder, Shrum,

Mesick, Hobson, and Knoff are time-barred by the statute of limitations. To the extent

that the claims are not time barred, summary judgment is warranted pursuant to *Heck v. Humphrey*; and, with respect to Officer Knoff, judicial immunity.[3]

3.   **Discussion**

A.   *Statute of Limitations*

Federal civil rights actions filed under 42 U.S.C. § 1983 and arising from conduct in Idaho are governed by a two-year statute of limitations. Idaho Code § 5-219; *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that state statute of limitation for personal injury actions governs § 1983 actions), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Although the state statute of limitations governs the time for filing a Section 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id.*

If a violation of constitutional rights takes place over a period of time, however, it may be considered a "continuing wrong," meaning the statute of limitations may not start

---

[3] Because the Court concludes the statute of limitations, *Heck v. Humphrey*, and judicial immunity bar Plaintiff's claims against Defendants, the Court declines to reach Defendants' arguments that claim and issue preclusion, as well as judicial estoppel, provide alternative grounds for summary judgment.

**MEMORANDUM DECISION AND ORDER  - 20**

to run until the end of the time period. The continuing violations doctrine functions as an exception to the discovery rule of accrual, "allowing a plaintiff to seek relief for events outside of the limitations period." *Bird v. Dep't of Human Servs*., 935 F.3d 738, 746 (9th Cir. 2019), *cert. denied Bird v. Hawaii*, 140 S. Ct. 899, 205 L. Ed. 2d 468 (2020). In other words, a plaintiff can recover for the whole course of conduct, even if it began outside the limitations period. *Id.* The continuing violation doctrine can be applied in § 1983 actions. *See Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997).

However, the doctrine is applicable to continuing wrongful action, not to continuing injury accruing from an earlier wrong. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). The mere "continuing impact from past violations is not actionable." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). *See also Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."). Put differently, if more than one decision by the defendants is at issue, the question is whether the later decision was "the inevitable consequence of an earlier decision," which will not trigger a new statute of limitations; or "the result of independent consideration," which will cause a new statute of limitations to begin. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir.2002); *see also The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 702 (9th Cir. 2009). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts [become] most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979).

MEMORANDUM DECISION AND ORDER  - 21

Plaintiff filed the complaint in this case on February 11, 2019. Therefore, any claims that accrued prior to February 11, 2017, are time-barred, unless an exception applies. Defendants argue that all of Plaintiff's constitutional claims are untimely because the acts which Plaintiff complains of stem from Judge Mitchell's sentence, imposed on September 1, 2010. In turn, Plaintiff contends that Defendants actions constitute a continuing practice that began prior to the expiration of the limitations period, such that his claims are not time-barred.

The Court finds Plaintiff's First Amendment free speech claim, Fifth Amendment violation claims, and Fourteenth Amendment due process violation claims, all asserted under Section 1983, accrued on September 1, 2010, or shortly thereafter. Plaintiff's claims are premised on the fact that he was required to undergo sex offender treatment and therefore placed on the sex offender caseload while on parole; required to re-take a full disclosure polygraph test; and restricted from accessing the internet. Judge Mitchell initially ordered Plaintiff to complete sex offender treatment and take a full disclosure polygraph test. As a result, he was classified as a sex offender for parole purposes, resulting in the imposition of a condition that he have no access, or restricted access upon Commission approval, to the internet. He first filed three grievances regarding these conditions of supervision on November 7, 2016,[4] well outside the statute of limitations period. (Dkt. 21-5 at 26 – 29.)

---

[4] In the grievance regarding internet access, Plaintiff initially objected to his restricted internet access in general. However, his First Amendment retaliation claim is premised upon his objection to repeated requests by Officers Keeler and Rawson that he delete his Facebook profile, which he asserted was maintained by his father.

**MEMORANDUM DECISION AND ORDER  - 22**

The undisputed facts establish that additional conditions of supervision, such as curfew, electronic monitoring, and discretionary jail time, correspond to repeated refusals of Plaintiff to comply with the initial sentencing order. Thus, the acts which Plaintiff complains of are nothing more than the "delayed, but inevitable, consequence of the original...decision." *Knox*, 260 F.3d at 1014. No new act occurred, and no new limitation period began, each and every time one of the Defendants enforced the sentencing terms imposed by Judge Mitchell in 2010; imposed additional supervision conditions pursuant to the same; or disciplined Plaintiff for violating them. Plaintiff has simply pled continuing "ill effects" resulting from being classified as a sex offender during his incarceration and later parole, having to undergo sex offender treatment, and take a full disclosure polygraph test, which requirements were imposed pursuant to Judge Mitchell's sentence. The Court finds that all of the consequences Plaintiff complains of stem from the 2010 sentencing order, rendering Plaintiff's constitutional claims time-barred. *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012).

Plaintiff's state law claims for negligence and negligent infliction of emotional distress arise out of the same conduct forming the basis of his constitutional claims, and are therefore time-barred as well.[5]

---

[5] The Court's Initial Review Order mentioned Plaintiff's state law claims in passing, noting that Idaho Code § 5-219 provides for a two-year statute of limitations for personal injury claims. (Dkt. 6 at 6.)

**MEMORANDUM DECISION AND ORDER - 23**

Case 1:19-cv-00053-CWD   Document 31   Filed 03/31/21   Page 24 of 30

The Court will grant Defendants' motion for summary judgment as to all Section 1983 and all state law claims asserted against Defendants.[6] To the extent any of Plaintiff's Section 1983 claims against Defendants arguably survive the statute of limitations, they are barred for additional reasons, discussed below.

## B.     *Heck v. Humphrey*

Defendants argue alternatively that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid." *Id*. at 486-87. Thus, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction or sentence, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 487. The basis for the Court's decision in

---

[6] Plaintiff's argument premised upon *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), is unresponsive to Defendants' statute of limitations defense. In *Neal*, the United States Court of Appeals for the Ninth Circuit held that persons accused, but not convicted, of sex offenses could be compelled to undergo a treatment program prior to release on parole, so long as certain procedural protections are provided. Here, Plaintiff received all of the process he was due prior to Judge Mitchell sentencing him to complete sex offender treatment and take a full disclosure polygraph test. And Defendants' later classification of Plaintiff as a sex offender for purposes of parole does not implicate a liberty interest. *See Vega v. Lantz*, 596 F.3d 77, 79, 83–84 (2d Cir. 2010) (finding no liberty interest in assigning "sex offender needs score" or "sex offender risk score," which were "designed to assess what rehabilitative treatments were appropriate[ ] and ... to assess [prisoner's] risk of dangerousness"—even when that assignment was based on acquitted conduct). It appears Defendants' classification of Plaintiff as a sex offender was not a formal classification, but rather an internal designation used to facilitate treatment and supervision and, thus, would not give rise to a protected liberty interest. *Fletcher v. Idaho Dep't of Correction*, No. 1:18-CV-00267-BLW, 2020 WL 7082690, at *7 (D. Idaho Dec. 3, 2020). Plaintiff was not required to register as a sex offender in Idaho. (Dkt. 30-3 at 12.)

MEMORANDUM DECISION AND ORDER  - 24

*Heck* is that habeas corpus actions, not § 1983 claims, provide the sole vehicle by which an inmate may bring a collateral challenge in federal court to the legality of a state court conviction or sentence. *Id*. As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Here, Plaintiff seeks damages and a declaration that Defendants' acts, which occurred during his parole and stemmed from Defendants' informal classification of Plaintiff as a sex offender for supervision purposes, violate the United States Constitution. Specifically, he contests the parole conditions that he complete sex offender treatment and take, or re-take, a full-disclosure polygraph, even though he was not convicted of a sex offense. The successful prosecution of Plaintiff's constitutional claims under Section 1983would necessarily imply that Judge Mitchell's sentence based upon a plea to the charge of felony injury to a child was invalid. Plaintiff unsuccessfully challenged Judge Mitchell's sentence, and the acts Defendants took to carry it out, in a habeas action. (Dkt. 30-3.)[7] The Court therefore concludes Plaintiffs' constitutional claims for violation of the First, Fifth and Fourteenth Amendments are not cognizable under Section 1983.

---

[7] Plaintiff also sought relief pursuant to Idaho Crim. R. 35, which motion Judge Mitchell denied on November 7, 2011. (Dkt. 21-5 at 9 – 15.)

**MEMORANDUM DECISION AND ORDER  - 25**

C.      *Judicial Immunity – Defendant Knoff*

Officer Knoff prepared written parole violation findings on November 29, 2018, in his role as the Violation Hearing Officer. Plaintiff contends Knoff retaliated against him for invoking his Fifth Amendment rights when asked questions during a full-disclosure polygraph examination, and that there was no evidence to support Knoff's violation findings. In the proposed amended complaint, Plaintiff alleges Knoff conspired with Officer Keeler and Rawson to violate his constitutional rights.

Knoff is the only named defendant who was not involved with supervising Plaintiff while on parole, and he was not tasked with carrying out the provisions of Judge Mitchell's sentence. Thus, to the extent the claims against Officer Knoff do not arise from the original sentencing requirements, the Court finds that the doctrine of judicial immunity bars Plaintiff's claims against him.

Under the doctrine of absolute judicial immunity, a judge is not liable for monetary damages for acts performed in the exercise of his or her judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Parole board members are entitled to absolute immunity when they perform "quasi-judicial" functions. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (citing *Anderson v. Boyd*, 714 F.2d 906, 909 – 10 (9th Cir. 1983)). Thus, parole board officials are entitled to absolute quasi-judicial immunity for decisions "to grant, deny, or revoke parole" because these tasks are "functionally comparable" to tasks performed by judges. *Id.* (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)). Absolute immunity has also been extended to parole officials for the "imposition of parole conditions" and the "execution of parole revocation

**MEMORANDUM DECISION AND ORDER  - 26**

procedures," tasks integrally related to an official's decision to grant or revoke parole. *Id.* (citing *Anderson*, 714 F.2d at 909).

Once it is determined that a judge was acting in his or her judicial capacity, absolute immunity applies, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) (internal citations omitted). Judicial immunity is not lost by allegations that a judge conspired with one party to rule against another party: "a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors." *Id.* at 1078.

After conducting a hearing on January 11, 2018, Knoff prepared written findings determining Plaintiff was guilty of violating the conditions of his parole contract as set forth in the report of violation. (Dkt. 21-5 at 128 - 133.) Knoff was clearly performing a quasi-judicial function, given he rendered a decision recommending that Plaintiff's parole be revoked. The Court therefore finds the claims against Knoff are barred by the doctrine of judicial immunity.

## PLAINTIFF'S MOTION TO AMEND

Plaintiff asserts new claims in the proposed Amended Complaint, not all of which are appropriately pursued in the same action. General Order 342 provides,

> Claims against multiple defendants within a complaint or any type of amended complaint must meet the requirements in Federal Rule of Civil Procedure 20(a)(2)—that at least one claim against all defendants must "aris[e] out of the same transaction, occurrence, or series of transactions or

occurrences" and raise "a question of law or fact common to
all defendants." Claims that do not meet these standards must
be separated into different lawsuits.

General Order 342, *In Re: Procedural Rules for Prisoner Civil Case Filings and for*

*Prisoner E-Filing Program*, § A.1.e. (adopted Feb. 7, 2019).

Plaintiff asserts an Eight Amendment claim against Defendants Corizon Health,

Brian Shjerve, William Otzenberger, Daniel Dorris, Seth Bowen, and Dillion McMurtrey,

alleging that Defendants used unjustifiable and excessive force during an incident on

April 30, 2019, and that thereafter, Plaintiff received inadequate medical treatment.[8] This

claim does not arise out of the same transaction, occurrence, or series of transactions or

occurrences; neither do they raise a question of law or fact common to all defendants.

Therefore, to ensure compliance with General Order 342 and to further the goal of

judicial efficiency, Plaintiff will not be permitted to amend his complaint in this action to

assert new claims based upon violations of the Eighth Amendment, and he must assert

them in a new lawsuit.[9]

Plaintiff proposed to name as two new Defendants Chief of Probation and Parole

David Birch and Officer John Andrich. John Andrich participated in Plaintiff's

supervision. For example, according to the record, he made a supervision contact on

November 15, 2017. (Dkt. 21-5 at 72.) According to the proposed Amended Complaint,

[8] Plaintiff also includes Eighth Amendment claims concerning incidents occurring on September 9, 2010, June 10, 2011, June 23, 2011, June 27, 2011, and December 18, 2013. (Proposed Am. Compl. at 4 – 7, Dkt. 26-1.) Any claims for inadequate medical treatment constituting cruel and unusual punishment in violation of the Eighth Amendment arising from these incidents are barred by the two-year statute of limitations.
[9] The two-year statute of limitations on claims arising from the incident on April 30, 2019, has not yet run.

**MEMORANDUM DECISION AND ORDER  - 28**

Plaintiff informed Deputy Chief of Probation and Parole Dylan Hobson and Chief of Probation and Parole David Birch[10]  about the multiple grievances he filed concerning the actions taken by Officers Rawson, Keeler, Shrum, Schraeder, and Mesick forcing him to re-take a full disclosure polygraph, and the perceived retaliation for refusing to answer questions to which he asserted his Fifth Amendment right against self-incrimination. Hobson responded to Plaintiff's notification on or about January 29, 2019. (Dkt. 26-1 at 25.)

The factual basis for, and the claims Plaintiff asserts against Defendants Rawson, Keeler, Schraeder, Shrum, Mesick, Hobson, Knoff in the proposed amended complaint are not materially different than those asserted in the Complaint. Amendment would therefore be futile for the reasons discussed above. To the extent Plaintiff seeks to add additional claims against Birch and Andrich arising out of the same conduct pled in the Complaint against Defendants, these claims would be barred by the statute of limitations and *Heck v. Humphrey*, for the same reasons previously discussed.

## CONCLUSION

Based on all of the foregoing, the Court concludes that Defendants have met their burden of proof and have shown that Plaintiff did not file his Complaint within two years of the accrual of his state law and Section 1983 claims based upon the First, Fifth, and Fourteenth Amendments to the United States Constitution. Rather, Plaintiff has alleged that he continued to suffer harm as a consequence of Judge Mitchell's sentencing order

---

[10] It is not clear when Plaintiff contacted Hobson and Birch.

entered in 2010, and the resulting imposition of parole supervision conditions arising from the same. Therefore, Plaintiff's claims are time-barred. To the extent Plaintiff's Section 1983 claims against Defendants are not time-barred, summary judgment is properly granted to Defendants based upon *Heck v. Humphrey*. Last, if hearing officer Knoff's later conduct is considered a new act, rather than the consequence of Judge Mitchell's sentence, the doctrine of judicial immunity bars Plaintiff's claims against Knoff.

Plaintiff will not be permitted to amend his complaint in this action. The allegations and claims raised against the Defendants named in the proposed amended complaint are not materially different than those raised in the Complaint, and amendment would therefore be futile. Unrelated claims must be brought in a separate lawsuit.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)   Defendants' Motion for Summary Judgment (Dkt. 21) is **GRANTED**.

2)   Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 26) is **DENIED**.

DATED: March 31, 2021

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 30**